UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORID
PENSACOLA DIVISION

ERNEST R. GIBSON, JR.,
FDOC Inmate No. 281824,
 Plaintiff,

vs.             Case No.: 3:21cv3947/MCR/EMT

CLEMONS, et al.,
 Defendants.
           /

## **REPORT AND RECOMMENDATION**

Plaintiff Ernest R. Gibson, Jr. (Gibson), an inmate of the Florida Department of Corrections (FDOC) proceeding pro se, commenced this civil rights action on November 23, 2021, by filing a complaint and motion to proceed in forma pauperis (IFP) in the federal court for the Middle District of Florida (ECF Nos. 1, 2).[1] The Middle District transferred the case to the Northern District (ECF No. 3).

The undersigned reviewed Gibson's IFP motion and determined it was insufficient under 28 U.S.C. § 1915(a)(2) (*see* ECF No. 6). Therefore, the court denied Gibson's IFP motion without prejudice to his filing a sufficient IFP motion

---

[1] The last page of the attachments to the complaint includes an institutional date stamp, initialed by Gibson, stating the complaint and attachments were provided to prison officials for mailing on November 23, 2021 (*see* ECF No. 1-1 at 31).

or paying the filing fee of $402.00 (*id.*).   Gibson has now filed a second IFP motion (ECF No. 7).

Upon review of Gibson's Complaint and litigation history, the undersigned concludes Gibson is prohibited from proceeding IFP, pursuant to 28 U.S.C. § 1915(g), and thus was required to pay the filing fee at the time he commenced this case.   Therefore, the court recommends that this case be dismissed without prejudice for Gibson's failure to pay the filing fee at the time he brought this lawsuit.[2]

I.     THE "THREE-STRIKES" PROVISION OF 28 U.S.C. § 1915(g)

Section 1915(g) prohibits a prisoner from proceeding IFP if the prisoner previously filed three or more actions that were dismissed for frivolity, maliciousness, or failure to state a claim.  *See* 28 U.S.C. § 1915(g).  The statute provides a narrow exception for instances in which the prisoner-litigant is "under imminent danger of serious physical injury."  *Id.*

A prisoner who is barred from proceeding IFP must pay the filing fee at the time he initiates his lawsuit, and failure to do so warrants dismissal of his case

---

[2] The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

without prejudice.  *See Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002) (holding that "the proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed in forma pauperis pursuant to the provisions of § 1915(g)," because the prisoner "must pay the filing fee at the time he initiates the suit"); *Vanderberg v. Donaldson*, 259 F.3d 1321, 1324 (11th Cir. 2001) (stating that after three meritless suits, a prisoner must pay the full filing fee at the time he initiates suit).  As previously discussed, the only exception is if the prisoner alleges he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g); *see also Brown v. Johnson*, 387 F.3d 1344 (11th Cir. 2004).

II. DISCUSSION

In Gibson's answers to the questions in the "Previous Lawsuits" section of the Complaint, Gibson states he had a case dismissed under the "three strikes rule" of 28 U.S.C. § 1915(g) (*see* ECF No. 1 at 8).  The undersigned reviewed Gibson's litigation history and determined that this court recognized Gibson as a "three-striker" in six other civil rights cases:

- Case No. 4:21cv63/TKW/MAF, dismissed pursuant to § 1915(g) on March 1, 2021;

- Case No. 4:20cv573/TKW/MAF, dismissed pursuant to § 1915(g) on January 20, 2021;

- Case No. 4:20cv483/MW/MAF, dismissed pursuant to § 1915(g) on November 6, 2020;

- Case No. 4:20cv473/TKW/MAF, dismissed pursuant to § 1915(g) on October 23, 2020;

- Case No. 4:20cv464/TKW/MAF, dismissed pursuant to § 1915(g) on October 23, 2020;

- Case No. 4:20cv460WS/MAF, dismissed pursuant to § 1915(g) on October 26, 2020.

The afore-mentioned cases identify Gibson's "strikes," and the undersigned independently verified that they qualify as such.[3]

Because Gibson had at least three strikes when he commenced this case, he was precluded from initiating this lawsuit without contemporaneously paying the filing fee. The only exception to this rule is if the allegations of the Complaint demonstrate that Gibson is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g); *Brown, supra*. To fall within this exception, Gibson's complaint must include "specific, credible allegations of imminent-danger of serious physical harm." *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1179 (10th Cir. 2011).

---

[3] Gibson also initiated Case No. 6:20cv01654-PGB-LRH in the Middle District of Florida; it was dismissed for failure to state a claim on September 16, 2020. Gibson initiated Case No. 6:20cv1653-PGB-EJK in the Middle District; it was dismissed on September 14, 2020, for failure to state a claim. Gibson initiated Case No. 6:20c01399-GKS-DCI in the Middle District; it was dismissed for failure to state a claim on September 15, 2020. Those three dismissals count as "three strikes," pursuant to 28 U.S.C. § 1915(g).

Case No.: 3:21cv3947/MCR/EMT

*see also Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002) (holding that "imminent danger" exception to § 1915(g)'s "three strikes" rule is construed narrowly and available only "for genuine emergencies," where "time is pressing," and "a threat . . . is real and proximate."). "Imminent danger" is assessed not at the time of the alleged incident, but at the time the complaint is filed. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 313(3d Cir. 2001).

Gibson's Complaint concerns event beginning on October 20, 2021, when he arrived at Okaloosa Correctional Institution (ECF No. 1 at 4–5). Gibson alleges prison officials delayed eight days (until October 28, 2021) before issuing a "transgender memo," even though he presented his "transgender memos" from former institutions to Okaloosa C.I. officials, including representatives of the classification department, mental health staff, medical supervisor, and property supervisor (*id.* at 1–4). Gibson also alleges he is deemed an "ADA" inmate and uses a walker (*id.* at 6). Gibson alleges he was placed in a "non-ADA cell" in administrative confinement on November 8, 2021 (*id.*).[4]

---

[4] The FDOC rules governing Protective Management define administrative confinement as "the temporary separation of an inmate from inmates in general population in order to provide for security and safety until such time as a more permanent inmate management decision process can be concluded, such as a referral to . . . protective management, or a transfer." Fla. Admin. Code r. 33-602.221(1)(a).

Gibson asserts Defendants' eight-day delay in issuing the "transgender memo" and housing him in a "non-ADA cell" violated his rights under the Sixth, Eighth, Ninth, Sixteenth, and Eighteenth Amendments (ECF No. 1 at 3). He alleges he suffered mental injury as a result of Defendants' conduct, and requests a transfer to an "ADA, transitive facility" (*id.* at 5).

Gibson submitted several documents to the court, including a copy of a "transgender memo" issued December 10, 2020, by staff at one of his former institutions (*see* ECF No. 7-1 at 4). The memo was directed to security staff from the classification department (*id.*). The memo states:

> Inmate Gibson has Identified as Transgender.
>
> **Concerning Showers**
>
> Transgender, intersex and gender dysphoria inmates shall be given the opportunity to shower separately from other inmates. Inmate Gibson should be allowed to shower during Formal Count
>
> **Concerning Searches**
>
> Procedure 602.018 describes the appropriate pat search and strip search procedure for transgender and intersex inmates. Pat searches should be conducted by female staff except in exigent circumstances or unless the arrival of a female staff member would disrupt normal daily operations of the institution. Strip searches of transgender and intersex inmates should be conducted in accordance with current procedure of the institution [sic] the inmate is housed.

(ECF No. 7-1 at 4).

Case No.: 3:21cv3947/MCR/EMT

Gibson also submitted a copy of an informational publication issued by the Transgender Law Center, advising California prisoners regarding how to advocate for themselves while in custody (ECF No. 1-1 at 19–20). The publication advises prisoners that under the Prison Rape Elimination Act (PREA), a prisoner's housing assignment should be based in part on where the prisoner would feel safest (*id.* at 19). The publication further advises California prisoners that transgender prisoners should have access to private showers, and should not be placed in solitary confinement or other single cell (e.g., protective custody) "for their own protection" (*id.*). The publication advises prisoners that they are not allowed to sue a prison for failing to follow the PREA (*id.*).

The remaining documents submitted by Gibson are administrative grievances, some of which relate to the facts alleged in the Complaint.

According to the relevant grievances, on the day Gibson arrived at Okaloosa C.I., October 20, 2021, he filed an informal grievance complaining that two classification officers denied his "transgender memo" on the date he arrived, even though he presented the officers with memos issued at former institutions (ECF No. 1-1 at 17). Gibson requested a pass "to take showers and searches" (*id.*). Gibson stated he was housed in A1-dorm, and gang members were not allowing him to use the bathroom to wash his face or use the bathroom (*id.*). Gibson asked to be moved

to the faith-based dorm, "where I know I'll be safe" (*id.*). Gibson's grievance was approved on October 28, 2021, stating, "Your memo for pat searches and showering was issued to you on October 28, 2021" (*id.*).

Gibson filed a formal grievance with the warden on October 29, 2021, titled "PM Request" (ECF No. 1-1 at 16). Gibson complained he was being housed with gang members and "unable to shower and utilize the bathroom" (*id.*). Gibson requested placement in "protected custody" so he could shower, use the toilet, and "be safe of gang members" (*id.*). The warden responded that Gibson was placed on Protective Management status pending a Protective Management investigation and review by the Institutional Classification Team (ICT) (*id.* at 15).

Gibson submitted an informal grievance to the mental health department on November 1, 2021, requesting to be interviewed regarding his "accommodations," "transgender supplies," treatment, and therapy (ECF No. 1-1 at 12). Two members of the mental health staff responded that Gibson would be placed on call-out to discuss his concerns (*id.*).

Gibson submitted a grievance to the FDOC Secretary's Office on November 2, 2021 (ECF No. 7-1 at 7). Gibson complained he was housed in a dormitory with gang members, where he had been "threatening not to come into the rest room" to use the shower, brush his teeth, and urinate (*id.*). Gibson asserted that if he was

placed in a "faith base [sic] program," he would have been housed "in a ADA room (housed alone) to shower and use the restroom and not be harassed by gang members" (*id.*). Gibson acknowledged he was issued a "transgender memo" on October 28, 2021, but complained he still had not been placed in the "faith base [sic] program" (*id.* at 8). Gibson also asserted that a member of the medical staff informed him that Okaloosa C.I. was not "ADA equipped" to accommodate Gibson's "medical disformity [sic]" (*id.*). The Secretary's Office returned the grievance to Gibson without action because Gibson failed to comply with the rule requiring him to provide a copy of the formal grievance filed at the institutional level or provide an acceptable reason for bypassing that level of the grievance procedure (*id.* at 11).

Gibson alleges he was moved out of A1-dormitory (where the gang members were housed) to administrative confinement in E-dormitory on November 8, 2021, prior to the date he filed the Complaint and attachments in this case (*see* ECF No. 1 at 6; *see also* ECF No. 1-1 at 14 (indicating Gibson's housing quarters as E-dorm, cell 2108), 20 (indicating Gibson provided the civil rights complaint and attachments to prison officials for mailing on November 23, 2021)). Gibson's most recent filings indicate he is still in E-dorm (*see* ECF No. 8 at 9).

On November 9, 2021, Gibson complained that there were no "wall rails in the bath area" of his new housing unit (ECF No. 1-1 at 8). Defendant Dove, the assistant warden of programs, responded that both wings of Gibson's housing unit were equipped with handicapped showers (*id.*).

On November 12, 2021, Gibson filed an informal grievance with the Chief of Security, complaining that an officer (Sergeant Hill) refused to permit him to leave the cell to shower because Gibson was wearing a t-shirt (to cover his breasts) (ECF No. 1-1 at 13). The responding official approved the grievance on November 19, 2021, stating that staff would be educated concerning the shower procedure for transgender inmates (ECF No. 1-1 at 13). That same day, Gibson submitted a formal grievance complaining that on November 19, 2021, Sergeant Hill again refused to permit him to shower (ECF No. 7-1 at 24). The warden responded that Gibson's complaint was forwarded to the Office of the Inspector General for review (*id.* at 31).

Gibson's administrative grievances show he also filed numerous requests for placement in the "faith-based" or re-entry program, or transfer to an institution that provided "incentive/classes" so he could prepare to return to the community upon his scheduled release from the FDOC on January 18, 2023 (*see* ECF No. 7-1 at 9, 11, 15, 29, 39, 40). Responding officials essentially advised Gibson he must await

a final decision by the State Classification Officer after assessment of his protection needs (*see id.*).

Considering the allegations of Gibson's Complaint and the nearly one hundred pages of grievances and other documents he submitted, the only allegations that come remotely close to suggesting imminent danger of serious physical injury are those relating to Gibson's being housed with gang members in A1-dormitory.

The Eleventh Circuit has held that an inmate's allegations of continued exposure to physical attacks by gang members and others may satisfy the imminent danger exception. *See, e.g.*, *Sussman v. Sec'y, Fla. Dep't of Corr.*, No. 20-14152, 2022 WL 53608, at *2 (11th Cir. Jan. 6, 2022) (prisoner plaintiff satisfied "imminent danger" exception where he alleged that this sex offender status put him in danger of attacks by other inmates, that officials knew this, and that officials nonetheless encouraged attacks against him and failed to protect him from attacks by dangerous inmates); *Smith v. Dewberry*, 741 F. App'x 683, 686–87 (11th Cir. 2018) (prisoner plaintiff satisfied imminent danger exception where he alleged he suffered violent attack from fellow inmate and continued to receive threats of further violence from that inmate's gang affiliates, and although plaintiff was temporarily transferred to a different housing unit away from such gang members, he was never placed in protective custody following the attack, and was transferred back to a housing unit

with the gang members shortly before filing his civil rights complaint); *Barber v. Krepp*, 680 F. App'x 819, 821 (11th Cir. 2017) (prisoner plaintiff satisfied § 1915(g) where he alleged that, in retaliation for reporting misconduct by corrections employees, he had been stabbed, almost lost an eye, and been threatened with unnecessary anti-psychotic medication; even though plaintiff had since been transferred to another prison, he still satisfied § 1915(g) because he alleged his harassment was the result of a conspiracy that extended to other prisons in the statewide prison system).

Gibson's circumstances are very different. Gibson alleges he was initially housed in A1-dormitory upon his arrival at Okaloosa C.I. on October 20, 2021, but was moved to E-dormitory on November 8, 2021. Thus, by the time Gibson initiated this lawsuit on November 23, he had already been moved from the dormitory where the gang members were housed (A1) to E-dormitory and placed in administrative/protective custody pending a final decision by the State Classification Office regarding his protection needs. Gibson does not allege, nor do his grievances indicate, he has been transferred back to A1-dormitory, nor does he allege he is exposed to gang members or threats of physical harm in E-dormitory. Gibson's allegations of past threats are insufficient to satisfy the imminent danger exception.

Gibson's grievances describe unprofessional conduct and abusive language by two particular officers, Sergeant Hill and Officer Small, neither of whom is a named Defendant. Gibson alleges Sergeant Hill gave some of Gibson's personal property (a jacket, a uniform, and a pair of long johns) to another inmate and denied Gibson an opportunity to shower on two different days (*see* ECF No. 1-1 at 13; ECF No. 7-1 at 24, 25). Gibson alleges Officer Small once referred to him as "fag" and moved his walker during master roster count (from in front of a "utility door" to the middle of the dormitory), and then immediately returned it to its place (ECF No. 7-1 at 20). Gibson alleges on another occasion Officer Small referred to him as "queer" and "unbuckled his FDC uniform belt and invited me to his private part(s)" (*see id.* at 17, 32, 34). These allegations are not similar to those recognized by the Eleventh Circuit as suggesting imminent danger of serious physical injury at the hands of prison officials. *See, e.g., Jacoby v. Lanier*, 850 F. App'x 685, 688 (11th Cir. 2021) (prisoner plaintiff satisfied imminent danger exception where he identified defendants by name and alleged past harms and threats of future harm, including that officers repeatedly assaulted him, that he reported the officers for their wrongful conduct but no prison personnel intervened to protect him, and that officers threatened to seriously harm him if he did not drop the lawsuit); *Smith v. Clemons*, 465 F. App'x' 835, 837 (11th Cir. 2012) (prisoner plaintiff satisfied imminent danger

exception where he alleged prison officials engaged in physical violence, including punching him in the gut nine days after his hernia surgery, and inmate then received fresh threats of severe violence by same prison official who punched him).

Gibson's transgender status and use of a walker do not, alone, suggest he is in imminent danger of serious physical injury, in the absence of any allegation that he was deprived of use of his walker or subject to conditions or deprivations that compromised his health or safety. The absence of such allegations distinguishes this case from cases in which the Eleventh Circuit has held that a prisoner's allegations concerning his medical condition satisfied the "imminent danger" exception. *See Brown*, 387 F.3d 1344 (prisoner plaintiff satisfied 1915(g) where he alleged prison officials had withdrawn treatment for his HIV and hepatitis, and as a result, he suffered severe ongoing complications, was more susceptible to various illnesses, and his condition would rapidly deteriorate); *see also Smith v. Ward*, 848 F. App'x 853, 858 (11th Cir. 2021) (prisoner plaintiff satisfied imminent danger exception where he alleged his chronic hepatitis C had caused sores throughout his body, fatigue, vomiting, pain in the liver area, jaundice of skin and eyes, loss of appetite, hemorrhaging, and deterioration of other bodily organs, such that he was imminently threatened with danger without further treatment); *Wright v. Sprayberry*, 817 F. App'x 725, 729 (11th Cir. 2020) (inmate satisfied imminent danger exception

where he alleged near total withdrawal of medical care, in that warden and deputy warden deprived him of his medication upon arrival at prison, prison's medical staff failed to treat him for open wounds, a broken hand, and a gum infection, and he developed the infection requiring dental extractions and leg sores from deep vein thrombosis, had untreated, open wounds, and had not received any medication for his serious medical conditions); *O'Connor v. Warden, Fla. State Prison*, 754 F. App'x 940, 942 (11th Cir. 2019) (inmate satisfied imminent danger exception where he alleged he had not yet received an approved surgery, the continued delay of which was likely to cause his overall physical condition to deteriorate); *O'Connor v. Backman*, 743 F. App'x 373, 376 (11th Cir. 2018) (inmate satisfied imminent danger exception where he claimed he had suffered from severe gastrointestinal problems for years, which were exacerbated by prison personnel's withdrawal of appropriate medication and refusal to offer him an appropriate vegetarian diet, that symptoms included severe cramping, bloody stools, acid reflux, heartburn, and significant weight loss).

Considering the allegations of the Complaint and Gibson's numerous administrative grievances as a whole, they do not describe circumstances similar to those recognized by the Eleventh Circuit as sufficiently imminent and dangerous to satisfy § 1915(g). *See, e.g., Oliver v. Warden*, 669 F. App'x 518, 518–19 (11th Cir.

2016) (prisoner plaintiff's allegations, taken as a whole, satisfied imminent danger exception where inmate alleged defendants deprived him of his twice-a-day oral and inhaled allergy medications and refused three times his requests for medical appointments; inmate alleged that on several occasions, defendants denied him food, beat him, and threatened to kill him; inmate alleged he was currently being held in a cell without access to his allergy medications, clothing, personal property, a mattress, or running toilet facilities, and as a result of being denied his medications, inmate alleged he suffered—and continued to suffer—chest pains, shortness of breath, coughing, fainting spells, and blurred vision; and inmate alleged defendants continued to assault him and threaten to kill him).

III. CONCLUSION

Gibson is a "three-striker" and has not make a colorable showing that he was under imminent danger of serious physical injury when he commenced this civil rights case; therefore, he is barred from proceeding IFP and was required to pay the filing fee at the time he commenced this case. Gibson did not pay the filing fee. Accordingly, this case should be dismissed without prejudice. *See Dupree*, 284 F.3d at 1236.

Accordingly, it is respectfully **RECOMMENDED**:

1.	This action be **DISMISSED without prejudice**, pursuant to 28 U.S.C. § 1915(g), based on Plaintiff's failure to pay the filing fee at the time he initiated this action.

2.	All pending motions be **DENIED as moot**.

3.	The clerk of court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida this 19th day of January 2022.

*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**